NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**COOPER NOTIFICATION, INC.,**
*Plaintiff-Appellant,*

**v.**

**TWITTER, INC.,**
*Defendant-Appellee,*

AND

**EVERBRIDGE, INC.,**
*Defendant-Appellee,*

AND

**FEDERAL SIGNAL CORP.,**
*Defendant-Appellee.*

---

2012-1615

---

Appeal from the United States District Court for the District of Delaware in No. 09-CV-0865, Judge Leonard P. Stark.

---

Decided: August 30, 2013

---

PAUL J. ANDRE, Kramer Levin Naftalis & Frankel LLP, of Menlo Park, California, argued for plaintiff-appellant. With him on the brief was LISA KOBIALKA.

J. DAVID HADDEN, Fenwick & West LLP, of Mountain View, California, argued for all defendants-appellees. With him on the brief for Twitter, Inc., were LYNN PASAHOW, DAVID D. SCHUMANN, RYAN J. MARTON and PHILLIP J. HAACK. On the brief for Everbridge, Inc., were EDWARD A. CAVAZOS, CONOR CIVINS, and BENJAMIN L. BERNELL, Bracewell & Giuliani, LLP, of Austin, Texas. On the brief for Federal Signal Corp. were DANIEL W. MCDONALD, THOMAS J. LEACH and CHRISTOPHER DAVIS, Merchant & Gould P.C., of Minneapolis, Minnesota.

---

Before NEWMAN, LOURIE, and TARANTO, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* LOURIE.

Opinion concurring in part and dissenting in part filed by *Circuit Judge* TARANTO.

LOURIE, *Circuit Judge.*

Cooper Notification, Inc. ("Cooper") appeals from the summary judgment of the United States District Court for the District of Delaware holding that Twitter, Inc., Federal Signal, Inc., and Everbridge Corp. (collectively "the Defendants") do not infringe claims 12–18 of U.S. Patent 7,409,428 (the "'428 patent"). *Cooper Notification, Inc. v. Twitter, Inc.*, 867 F. Supp. 2d 485 (D. Del. 2012). Because the district court did not err in granting summary judgment of noninfringement, we *affirm*.

## BACKGROUND

Cooper owns the '428 patent, which discloses a system of mass messaging in which a message is sent to one or more communication gateways that forward that message to individual users. '428 patent col. 4 ll. 18–36. The

disclosed system allows many recipients to receive that message without overloading any one communication point. *Id.* An initial message is sent to a messaging subsystem that converts the first message into a "gateway message" containing information such as identifying users who will receive the message and providing address information for those users. *Id.* col. 10 ll. 10–42. The messaging subsystem then forwards one or more gateway messages to the communication gateways, which then forward the message to the individual users. *Id.* col. 4 ll. 18–36. The communication gateways can perform operations on the gateway messages, such as reformatting them. *Id.* col. 10 ll. 10–42.

Claim 1, which is not at issue on appeal, but is relevant to our decision, is directed to a communication method that takes a first message, converts it into a gateway message, and sends that message to the communication gateways. Upon receipt of the gateway message, the communication gateways distribute a second message to each user registered to that gateway.

Claim 1 recites:

1. A communication method comprising:

registering a plurality of users for receiving messages; determining, in response to receiving a first message from at least one alert originator, one or more user terminals to receive a second message corresponding to the received first message, each of the one or more user terminals being associated with at least one registered user;

converting the first message to one or more gateway messages; and

transferring each of the *one or more gateway messages to one or more corresponding communication gateways* for distribution of the second message by the one or more

communication gateways to each of the registered users associated with at least one message group, wherein the transfer is performed using a non-voice channel;

wherein converting further comprises reformatting, for each of the one or more gateway messages, the first message received from the alert originator to a format in which the communication gateway associated with the gateway message will accept and perform operations in response to the incoming gateway message and forming an address for each of the one or more gateway messages to include the domain name information associated with the communication gateway or the user identification information associated with the registered user receiving the second message.

*Id.* col. 29 ll. 20–46 (emphasis added).

Claim 12, which is directly at issue here, is directed to a communication system that converts a first message into a gateway message. The communication gateways then transmit that gateway message to the registered users.

Claim 12 reads as follows:

12. A communication system comprising:

a first messaging subsystem which may be coupled to an alert originator and to one or more communication gateways, wherein each of the gateways is also coupled to at least one user terminal, and wherein the first messaging subsystem associates a unique set of message parameters with each of the communication gateways;

wherein the first messaging subsystem is configured to transmit *at least one gateway*

> *message to a plurality of the user terminals* via the one or more communication gateways, in accordance with each set of the unique message parameters for each communication gateway, upon receiving a first message from the alert originator;
>
> wherein the first messaging subsystem is configured to reformat, for each of the one or more gateway messages, the first message received from the alert originator to a format in which the communication gateway associated with the gateway message will accept and perform operations in response to the incoming gateway message; and
>
> wherein the first messaging subsystem is configured to form an address for each of the one or more gateway messages to include the domain name information associated with the communication gateway or the user identification information associated with the registered user receiving the second message.

*Id.* col. 30 ll. 24–49 (emphasis added). Claims 13–18, also on appeal, are dependent upon claim 12. The determination of noninfringement therefore applies equally to the dependent claims and they are accordingly not treated separately.

On November 13, 2009, Cooper filed suit against the Defendants, accusing them of infringing claims 1–18 of the '428 patent. The Defendants all provide message notification systems. Although the particular implementations of the Defendants' systems differ, each system can deliver messages to end users through text messaging ("SMS") or email. The systems generally accept an original message, format that message into one or more gateway messages, and send the gateway message to a communication gateway that performs operations on that

message, such as formatting it for specific cellular phones. *Cooper*, 867 F. Supp. 2d at 496. The communication gateways then compose new, individual messages to be sent to the various subscribers or recipients. *Id.*

On August 26, 2010, the Defendants filed an *inter partes* reexamination request in the U.S. Patent and Trademark Office. The district court proceeding was not stayed pending the reexamination, and the court conducted a *Markman* hearing on September 9, 2011. After the *Markman* hearing, but before the court issued a claim construction order, the PTO examiner issued an action closing prosecution. The examiner rejected claims 1–3, 5, and 8–11, finding that those claims were anticipated or would have been obvious in view of the prior art, specifically U.S. Patent 6,816,878 ("Zimmers"). On the other hand, the examiner allowed claim 12 and its dependent claims. The examiner found that claim 1 and claim 12 differed in that in claim 1 the communication gateway composed a new, second message to send to the users, whereas in claim 12 the gateway message itself was sent to the users. The examiner stated that:

> [Claim 12] requires that the first messaging subsystem ". . . is configured to transmit at least one gateway message to a plurality of user terminals via the one or more communication gateways . . . which is not taught by Zimmers. Zimmers discloses that a gateway message . . . is transmitted to a gateway where an alert message is then created and transmitted to the user. The user does not receive a gateway message as claimed. . . .

> [T]he system of claim 1 creates a second message to send to the end users (as in Zimmers), rather than transmitting the gateway message to the user, . . .

Action Closing Prosecution, No. 95/001,425, at 21 (Oct. 6, 2011). The examiner thus rejected claim 1 and certain of

its dependent claims, but allowed claim 12 and its dependent claims.[1]

On November 30, 2011, Cooper notified the district court that it was no longer asserting claims 1–11 of the '428 patent against the Defendants. After the examiner's rejection, Cooper and the Defendants discussed dropping claims 1–11 from the litigation. J.A. 3924–25. Cooper proposed a joint stipulation withdrawing the claims with prejudice. J.A. 3927–29, 3932–33. Later, despite that proposal, it would not file the proposed stipulation to dismiss them with prejudice. J.A. 3946. The Defendants in turn formally moved for dismissal with prejudice. The court granted that motion, reasoning that the Defendants were entitled to certainty that those claims would not arise at a later date. J.A. 10574.

A few days before dismissing claims 1–11, the district court issued its *Markman* opinion and order construing the '428 patent's disputed terms. Significantly the court did not construe the transmission limitation of claim 12 ("transmit at least one gateway message to a plurality of user terminals via the one or more communication gateways"). However, after claims 1–11 were dropped, infringement of the accused products hinged on the construction of that limitation. The Defendants moved for summary judgment of noninfringement based on their proposed construction of the transmission limitation.

On May 25, 2012, the district court construed the transmission limitation, "transmit at least one gateway message to a plurality of the user terminals via the one or more communication gateways," to "require transmission

---

[1]     Cooper did not respond to the action closing prosecution and on March 20, 2012, the PTO sent a right of appeal notice. On April 20, 2012, the Defendants appealed certain non-adopted rejections of claims it had proposed in the reexamination proceeding and that appeal is currently ongoing.

such that the gateway message itself is delivered to the user terminals." *Cooper*, 867 F. Supp. 2d at 492. The district court relied on differences in the claim language of claims 1 and 12, as well as the prosecution history. Specifically, the district court noted differences in the claim language regarding the handling of the gateway message. The court compared claim 12's requirement of "transmit[ting] at least one gateway message *to a plurality of user terminals*" with claim 1's requirement of "transferring each of the one or more gateway messages *to one or more corresponding communication gateways*" and found that the difference in the claim language required the communication gateways of claim 12 to send the received gateway messages to the end users. *Id.* (emphasis original). The district court also noted that in the reexamination, the examiner rejected claim 1 as anticipated by Zimmers but did not reject claim 12 because claim 12 requires the "actual delivery of the *gateway message itself* to the user terminals." *Id.* (emphasis original). That led the court to conclude that claim 12 required that the user receive the actual gateway message.

Because the district court found that claim 12 required that the gateway message itself be delivered to the end user, the court granted summary judgment of noninfringement of claims 12–18 based on that construction. *Id.* at 495–96. The court found that there was no dispute that the accused systems did not send a gateway message to the end user. The court found that the Defendants' "accused gateway messages identified by Cooper . . . each contain substantive message content bundled together with the user information for *multiple* end users." *Id.* at 495 (emphasis original). The Defendants' accused second messages, in contrast, "contain only the substantive message content and the user information for the *single* end user actually receiving that particular second message." *Id.* (emphasis original). In other words, the messages that the end users actually received only contained the information for that end user and were not gateway

messages. The court thus found that there was no genuine dispute that in the Defendants' accused systems, only the second message was actually delivered to the end users, not the accused gateway messages. *Id.* The court therefore granted summary judgment of noninfringement. *Id.*

After the district court granted summary judgment, Cooper moved to allow the entry of supplemental infringement expert reports to address the claim construction in the summary judgment opinion. Having already found that Cooper had multiple opportunities to supplement its expert report before the summary judgment decision, but chose not to, the court denied the motion. *Cooper Notification, Inc. v. Twitter, Inc.*, No. 09-865-LPS, at 3 (D. Del. July 16, 2012), ECF No. 576.

Cooper appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

DISCUSSION

I. Standard of Review

We review *de novo* the district court's grant of summary judgment, drawing all reasonable inferences in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Hologic, Inc. v. SenoRx, Inc.*, 639 F.3d 1329, 1334 (Fed. Cir. 2011). Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Claim construction is a matter of law that we review *de novo* on appeal, *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 391 (1996), although we recognize and benefit from the expertise and vantage point of the trial court judge, *see Marine Polymer Techs., Inc. v. HemCon, Inc.*, 672 F.3d 1350, 1357 (Fed. Cir. 2012).

Unless a procedural ruling raises issues unique to patent law, we apply the law of the appropriate regional circuit. *Chimie v. PPG Indus.*, 402 F.3d 1371, 1376 (Fed.

Cir. 2005). According to the law of the Third Circuit, which controls here, exclusion of evidence by the district court is reviewed by an appellate court for abuse of discretion. *Glass v. Philadelphia Elec. Co.*, 34 F.3d 188, 191 (3d Cir. 1994). The Third Circuit reviews a district court's dismissal of litigation claims with prejudice for an abuse of discretion. *Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 260 n.1 (3d Cir. 2011).

II. Claim Construction of the Transmission Limitation

Cooper first argues that the district court erred in its construction of the transmission limitation. Cooper states that the district court misconstrued the claims to require separate receipt of both the gateway message and a separate second message, contrary to the claim language and the teachings of the '428 patent.

The Defendants respond that the district court correctly interpreted the phrase "transmit at least one gateway message to a plurality of user terminals via one or more communication gateways" to require "transmission such that the gateway message itself is delivered to the user terminals." They argue that the claim language and reexamination history of claim 12 require that the gateway messages be sent to the end users. Defendants further contend that Cooper is attempting to rewrite claim 12 to be claim 1, which was already found to be unpatentable by the PTO examiner.

We agree with the Defendants. The district court's interpretation of the transmission limitation is supported by the intrinsic evidence, and we therefore uphold that construction. Our claim construction analysis begins with the language of the claim itself, as it would have been understood by a person of ordinary skill in the art at the time of the invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (en banc) (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) (stating that "we look to the words of the claims

themselves . . . to define the scope of the patented invention")).

Claim 1, which, as has been indicated, has been found by a PTO examiner to be unpatentable on reexamination, requires the gateway message to be transferred to the communication gateways for "distribution of the second message by [those] communication gateways to each of the registered users." '428 Patent col. 29 ll. 29–33. Claim 12, on the other hand, requires the messaging system to "transmit at least one gateway message to a plurality of user terminals via the one or more communication gateways, . . . upon receiving a first message." *Id.* col. 30 ll. 32–36. Thus, claim 12's language requires that the communication system transmit "at least one gateway message *to* a plurality of user terminals." *Id.* (emphasis added). The claim language of claim 12 is clear that the gateway message itself is delivered to the users, as opposed to claim 1's language which states that a "second message" is distributed to each of the users.

Further, the examiner's reasons for differentiating claim 1 and claim 12, while not dispositive, can be helpful in determining the meaning of the claim terms. Reexaminations can "provid[e] the district court with the expert view of the PTO (when a claim survives the reexamination proceeding)." *Gould v. Control Laser Corp.*, 705 F.2d 1340 (Fed. Cir. 1983). The examiner differentiated claim 1 from claim 12 because, unlike claim 1 where a new second message was created from the gateway message and sent to the end users, claim 12 "transmitt[ed] the gateway message to the user," and that limitation was not taught in Zimmers. J.A. 12280. The examiner's statements during the reexamination support the district court's construction of the transmission limitation.

Finally, adopting Cooper's proposed claim construction would essentially make the transmission limitation of claim 12 mirror claim 1's handling of the gateway message and, as will be confirmed *infra*, claim 1 has already been dismissed with prejudice. By adopting Cooper's

proposed construction, we would be construing claim 12 in a way that circumvents the district court's dismissal with prejudice. Because its construction was supported by the claim language and the prosecution history, the district court did not err in its construction of the transmission limitation and hence did not err in its summary judgment of noninfringement of claims 12–18.

### III. Denial of Supplemental Infringement Reports

Cooper next argues that it was unfairly prejudiced by not having an opportunity to submit supplemental expert reports to address the district court's construction of the transmission limitation construed in its summary judgment opinion.

The Defendants respond that Cooper did not ask to supplement its infringement reports until after it lost on summary judgment. The Defendants further argue that they surfaced the transmission limitation issue in their expert reports in December 2011 and that Cooper was on notice of a possible need to supplement the record due to the examiner's clarification of the limitation.

We agree with the Defendants. The court correctly concluded that Cooper had ample time to indicate a desire to supplement the evidence, and the district court was well within its discretion to deny entry of supplemental infringement reports. The Third Circuit generally considers four factors in evaluating whether a district court properly exercised its discretion. *Chimie*, 402 F.3d at 1381. Those factors are: (1) the prejudice or surprise in fact of the party against whom the excluded evidence would have been submitted; (2) the ability of that party to cure the prejudice; (3) the extent to which waiver of the discovery deadline would disrupt the orderly and efficient trial of the case or of other cases in the court; and (4) bad faith or willfulness in failing to comply with the district court's order. *See In re TMI Litig.*, 193 F.3d 613, 721 (3d Cir. 1999) (*citing Meyers v. Pennypack Woods Home Ownership Assoc.*, 559 F.2d 894, 904–05 (3d Cir. 1977)).

Those factors weigh in favor of the district court's decision here.

Regarding the first and fourth factor, Cooper did not provide its detailed infringement contentions until serving its initial expert report on November 11, 2011. *Cooper*, 867 F. Supp. 2d at 498–99. After the Defendants raised their transmission limitation theory in their December 8, 2011 expert reports, Cooper did not attempt to supplement its reports regarding that limitation before the district court found for the Defendants. *Id.* Cooper was on notice from well before the district court issued its summary judgment opinion construing the transmission limitation and yet did not seek to remedy any shortcoming it believed existed. It cannot now claim surprise at an issue that it should have addressed earlier. The first factor thus supports the district court's decision and the fourth is no worse than neutral in that respect.

Regarding the second and third factors, supplemental infringement reports would likely generate new discovery, new expert reports responding to the supplemental reports and disclosures, and new summary judgment, *Daubert*, and *in limine* motions. The only way to cure the alleged prejudice to Cooper would have been to reinstate the trial and delay the final resolution of this case by months or years. The second and third factors, thus, also support the district court's decision. Because those factors support the district court's denial of entry of supplemental infringement reports, the court did not abuse its discretion in denying Cooper the opportunity to file them.

## IV. Dismissal of Claims 1–11 With Prejudice

Cooper also argues that the district court lacked jurisdiction to dismiss claims 1–11 because Cooper had withdrawn them from the case, and thus that it may reassert those claims at a later date because of a change in the law of inducement of infringement. Defendants respond that the court still had jurisdiction over claims 1–11 and dismissed them to ensure that they would not be

reasserted against the Defendants in some later litigation.

We agree with the Defendants that the district court retained jurisdiction over claims 1–11 and properly dismissed them. A district court retains jurisdiction over a patent suit unless there is a clear, unequivocal statement that the potential infringer will not be sued. *See SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372 (Fed. Cir. 2007) (finding jurisdiction despite vice president's statement that they had "absolutely no plan to sue [the alleged infringer]" because the patentee had a pattern of enforcing their patent rights and in previous negotiations, had only stated there was no current intent to sue). Further, a district court retains jurisdiction over claims in a patent suit for purposes of Federal Rule of Civil Procedure Rule 41 even if the patentee offers a covenant not to sue. *See Highway Equipment Co. v. FECO, Ltd.*, 469 F.3d 1027, 1033 n.1 (Fed. Cir. 2006) (finding that a covenant not to sue may have eliminated district court jurisdiction for patent-related counterclaims but "does not deprive the district court of jurisdiction to determine the disposition of the patent infringement claims raised in the Complaint under Rule 41"). In this case, Cooper initially provided such a statement, by agreeing with the Defendants to dismiss claims 1–11 with prejudice and sending to the Defendants a proposed stipulation to dismiss the claims with prejudice. J.A. 10572. The Defendants relied on that agreement by not addressing claims 1–11 in their invalidity expert reports.

But Cooper later withdrew its stipulation to dismiss the claims with prejudice. At the district court's later hearing, Cooper conceded that this trial was its one opportunity to bring claims 1–11 and that "[i]t is gone now," that the Defendants would "never have to face [claims 1–11] again," and that the Defendants "don't have to ever worry about the '428 patent [claims 1–11], . . . ever again." J.A. 10574. Despite those promises in open court, however, Cooper resisted dismissing the claims with

prejudice. The district court, therefore, believing that the Defendants were "entitled to as most certainty as [the court] can give them that they will never be confronted again with claims 1 through 11 of the '428 patent," dismissed the claims with prejudice. J.A. 10577. We see no reason to disturb that ruling.

Given Cooper's proposed stipulation for dismissal with prejudice, the Defendants' reliance on that stipulation, and Cooper's representations in open court, the district court was well within its discretion to dismiss the claims with prejudice. The court was entitled to insulate the Defendants from the exact situation we have before us, *i.e.*, the desire of Cooper to reassert the claims at a later date. Cooper argues that it would now like to assert the claims due to a change in the law, despite its earlier statements that the Defendants would never again have to worry about claims 1–11. Nonetheless, the district court was well within its discretion to take Cooper at its word and to dismiss the claims with prejudice.

## CONCLUSION

For the foregoing reasons, the decisions of the district court granting the Defendants' motion for summary judgment of noninfringement of claims 12–18 of the '428 patent, denying Cooper's motion for supplemental infringement reports, and dismissing claims 1–11 with prejudice are

**AFFIRMED**

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**COOPER NOTIFICATION, INC.,**
*Plaintiff-Appellant,*

**v.**

**TWITTER, INC.,**
*Defendant-Appellee,*

AND

**EVERBRIDGE, INC.,**
*Defendant-Appellee,*

AND

**FEDERAL SIGNAL CORP.,**
*Defendant-Appellee.*

---

2012-1615

---

Appeal from the United States District Court for the District of Delaware in No. 09-CV-0865, Judge Leonard P. Stark.

---

TARANTO, *Circuit Judge*, concurring in part, dissenting in part.

I join the majority in affirming the district court's dismissal with prejudice of claims 1 through 11. I join the

majority, too, in affirming the district court's construction of claim 12 insofar as that construction requires the transmitted gateway message to be received by user terminals. I part company with the majority and the district court in two respects.

First, I disagree with their understanding that receipt of the gateway message by the user terminals entails that the message received be completely unchanged, bit by bit, from the message initially sent. On its face, claim 12 requires the messaging system "to transmit at least one gateway message to a plurality of the user terminals." '428 patent, col. 30, lines 31-33. As the majority concludes, the natural meaning of that language here is that the transmitted gateway message is received by user terminals, especially given that the claim requirement of a "second message" received by user terminals, in order to have an antecedent basis, must refer to the "gateway message." But that conclusion does not exclude all possible alterations between transmission by the messaging system and receipt by the user—for instance, an alteration of address information without alteration of the text expressing the content being communicated. Nothing in the claim language, the specification, or the prosecution history compels such a strict exclusion.

The practice of "blind copies" (Bcc) of email messages supplies an example of a common understanding that the same "message" may be considered to be received even when the copies differ in certain respects, specifically, in the address information in the header field of a message. The proposed Internet standard document, Request for Comment (RFC) 2822, concerning "Internet Message Format," discusses blind copying in section 3.6.3. *See* Internet Engineering Task Force, Internet Message Format, RFC 2822, § 3.6.3 (April 2001), *available at* http://www.rfc-editor.org/rfc/rfc2822.txt. In one implementation,

> recipients specified in the "To:" and "Cc:" lines
> each are sent a copy of the message with the

"Bcc:" line removed . . . , but the recipients on the "Bcc:" line get a separate copy of the message containing a "Bcc:" line. (When there are multiple recipient addresses in the "Bcc:" field, some implementations actually send a separate copy of the message to each recipient with a "Bcc:" containing only the address of that particular recipient.)

*Id.* The "Bcc:" recipients thus get "a copy of the message" that is received by the "To:" and "Cc:" recipients, but the address information in the several copies is changed. This example points strongly toward an accepted usage, at least in the area of electronic messaging, under which the address portion of a transmitted multi-cast message may be changed for delivery to different recipients, yet all recipients are understood to receive copies of the same "message." Similar usage may apply to software that transforms a group email into a group of individually addressed emails. I see no basis for departing from that intuitive, common-sense understanding in construing the requirement of claim 12 that the message transmitted by the messaging system arrive at the user terminals.

The majority opinion rests its contrary, strict-exclusion-of-all-changes construction to a large extent on the understanding that (i) there must be a difference in scope between the transmission limitations of claims 1 and 12 and (ii) the difference would be erased unless what is received by the user terminals in claim 12 is identical, bit by bit, to what left the messaging system. The second of those steps seems to me wrong. The reason is that claim 1 permits a vast range of differences between the gateway message and the message received by the user terminals—differences that could never be encompassed within a notion that the same "message" (the gateway message) is received, as claim 12 requires. Allowing some changes in the claim 12 messages thus does not collapse claim 12 into claim 1. Nor does it contradict anything the examiner said during reexamination about the distinction

between claim 1 and claim 12, because the examiner, in observing that the latter requires the gateway message to arrive at the user while the former does not, said nothing about what that requirement entails, such as whether it excludes all changes, including address changes, between sending and receipt.

Specifically, claim 1 recites a "first message," a "second message corresponding to the received first message," "converting the first message to one or more gateway messages" (through format changes that allow the gateway to understand the first message), and "transferring . . . gateway messages to one or more corresponding communication gateways for distribution of the second message"—the "second message" being the message the user receives. '428 patent, col. 29, lines 22-46. Critically, claim 1 does not define the relationship between the gateway message and the second message, except to say that the gateway message acts as a kind of trigger for the distribution of the second message, which must in some undefined way "correspond[]" with the first message that gets reformatted into the gateway message. In no sense does claim 1 require the gateway message (or first message) to be received by user terminals, *i.e.*, to be the same as the received message. Under claim 1, every word or character in the user-received message, including in the text expressing the content being communicated (body), could differ from what is in the gateway message or first message: the body of the first and gateway messages could read, "thermometer number 7 reads 140 degrees," and the second message (programmed into the gateway for distribution to users) could read, "FIRE ALERT; EVACUATE BUILDING CALMLY BUT QUICKLY." Such examples are plainly covered by claim 1, but they could not reasonably be covered by claim 12 according to an ordinary meaning that allows a much more limited range of changes, such as in addressing. The key premise of the no-change-at-all construction—the need to avoid making claims 1 and 12 identical in scope—thus seems to me not to support that construction.

Without the rigid no-change-at-all construction, the district court's summary judgment of no infringement—even of no literal infringement—cannot stand. That is so without regard to any supplemental reports submitted by Cooper (which, as the majority holds, the district court could properly reject). We do not have before us a district court ruling, or an evidentiary and legal presentation by the defendants, that acknowledges the ordinary-meaning possibility of some changes along the transmission path and then focuses on what changes, in type or magnitude, would be understood by a person of ordinary skill in the art to be consistent with the requirement that the "gateway message" gets received by user terminals and whether the accused systems make more than such changes. Without examining those questions, a judgment of no literal infringement on claim 12 and its dependent claims cannot be entered. I would remand for further proceedings on those questions, leaving to the district court whether further claim construction should occur or whether the matter should proceed directly to the application-of-construction stage of an infringement analysis.

Second, even under the no-change-at-all construction adopted by the majority and the district court, I believe that Cooper pointed to enough evidence—without regard to the supplemental reports it sought to add to the record—to create a genuine issue of fact on infringement of claim 12 (and its dependent claims) under the doctrine of equivalents. While it is undisputed that in the accused systems some changes are made between sending out and user receipt, as the majority explains, Cooper consistently argued that, and submitted expert evidence that explained in simple terms why, the changes the accused systems make in the gateway messages make no substantial difference to the role of the claim 12 transmission/receipt limitation.

The defendants criticize the explanation as insufficiently expansive, citing the requirement of particularized testimony and linking argument for equivalents proof.

*See Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1566-67 (Fed. Cir. 1996). But I see no need for more explanation, at least at the summary-judgment stage, where the point is so simple, namely, that in the accused systems there is no change in the communicative text, but at most only in certain addressing or formatting information. Moreover, adopting that explanation of equivalents would not vitiate the claim limitation by leaving the scope of claim 12 the same as if the limitation were not present; nor would it override any representation or action by Cooper during prosecution. I would accordingly hold that Cooper said enough to preclude summary judgment of no equivalents infringement even under the strict construction of claim 12 adopted by the district court and, now, by the majority.

For the foregoing reasons, I would reverse in part the district court's claim construction and the order granting summary judgment of non-infringement. In those respects, I respectfully dissent.